IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHANTELLE K. JAMES, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-09-3634 |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of the Social § | |
| Security Administration, § | |
| § | |
| Defendant. § | |

MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

Before the Court[1] in this social security appeal are Plaintiff's Motion for Summary Judgment (Document No. 8), Defendant's Motion for Summary Judgment (Document No. 9), and Defendant's Brief in Support and in Response to Plaintiff's Motion for Summary Judgment (Document No. 10). After considering these motions and the parties' briefings, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment (Document No. 8) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 9) is DENIED, and the matter is REMANDED for further proceedings.

**I. Introduction**

Plaintiff Chantelle James (James) brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of a final

---

[1] On March 25, 2010, the parties consented to trial before the undersigned Magistrate Judge. Upon consent, the case was transferred to the Magistrate Judge for all proceedings (Doc. No. 7).

decision of the Commissioner of Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB"). James' Motion for Summary Judgment (Document No. 8) states that substantial evidence does not support the decision of the Administrative Law Judge ("ALJ"), and that the ALJ, Gerald L. Meyer, committed errors of law when he found that James was not disabled under the Act.[2] James seeks an order reversing the Commissioner's decision with instructions to award benefits or in the alternative, an order remanding for full consideration of James' Systemic Lupus Erythematosus ("SLE"). The Commissioner contends in Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 10) that there was substantial evidence in the record to support the ALJ's finding that James was not disabled and that the Commissioner followed the appropriate legal standards in reaching a final decision, and therefore the Commissioner's ruling should be affirmed.

## II. Administrative Proceedings

James filed for DIB on February 28, 2008, claiming disability from June 2, 2006 forward as a result of SLE, arthritis, pleurisy, and Sjogren's syndrome. (Tr. 18).[3] The Social Security Administration denied her application at the initial and reconsideration stages. (Tr. 16). After that, James requested a hearing before an ALJ. (Tr. 16). The Social Security Administration granted her request, and the ALJ held a hearing on

---

[2] James also argues that her second application for DIB, filed after the final September 15, 2009 decision of the Appeals Council, and pursuant to which she was granted benefits in March of 2010 should be controlling over the ALJ's finding that she was not disabled. James' original complaint (Doc. No. 1), however, only addresses the first decision, and "whether a subsequent application is approved is of no moment to the question of whether the prior application was meritorious *at the time of consideration*." *Winston ex rel D.F. v. Astrue*, 341 F. A'ppx 995, 998 (5th Cir. 2009) (emphasis in original).

[3] "Tr." refers to the transcript of the administrative record.

2

January 26, 2009, in Houston, Texas. (Tr. 16). On April 2, 2009, the ALJ issued his decision finding James not disabled. (Tr. 16–23). At step one, the ALJ found that James met the insured status requirements of the Social Security Act through December 31, 2011, and that James had not engaged in substantial, gainful activity since June 2, 2006, her alleged onset date. (Tr. 18). At step two, based on the medical records, the ALJ found that James had the following medically determinable impairments: lupus, arthritis, pleurisy, and Sjogren's syndrome. (Tr. 18). At step three, the ALJ determined that the impairments, either singly or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525 and 404.1526). (Tr. 18). At step four, the ALJ concluded that James had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except that she is unable to work around hazardous conditions such as dangerous machinery. As her past work as an accountant fell within that RFC, the ALJ determined that she could perform her past work and that she was therefore not disabled. (Tr. 19).

James then asked for a review by the Appeals Council of the ALJ's adverse decision. (Tr. 7). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. After considering James' contentions in light of the applicable regulations and evidence, the Appeals Council concluded, on September 15, 2009, that there was no basis upon which to grant

3

James' request for review. (Tr. 1–3). The ALJ's findings and decision thus became final.

James has timely filed her appeal of the ALJ's decision. 42 U.S.C. 405(g). The Commissioner has filed a Motion for Summary Judgment (Document No. 9). James has also filed a Motion for Summary Judgment (Document No. 8), to which the Commissioner has responded (Document No. 10). This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 272. (Document No. 3-2). There is no dispute as to the facts contained therein.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision.

4

*Chaparro v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones v. Apfel*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if she is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

> 1. If the claimant is presently working, a finding of "not disabled" must be made;
>
> 2. If the claimant does not have a "severe" impairment or combination of impairments, she will not be found disabled;
>
> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual functioning capacity, she will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d

614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

Here, the ALJ found at step two that James had the following severe impairments: Lupus, arthritis, pleurisy, and Sjogren's syndrome. (Tr. 18). At step three, the ALJ determined James did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. (Tr. 18). In making this determination, the ALJ only explained that:

> In reaching this conclusion, I considered all of the claimant's impairments, including lupus, arthritis, pleurisy, and Sjogren's syndrome; but, I find that none of these impairments meet or equal the severity criteria of any of the impairments listed in the regulations.

(Tr. 19).

In this appeal, James argues that (1) the Commissioner did not properly assess her SLE, (2) the Commissioner erred by ruling that James could return to her prior occupation as an accountant, and (3) the Appeals Council failed to properly consider new and material evidence supporting James' SLE. As such, the Court must determine whether substantial evidence supports the ALJ's findings at step three and step four. In making this determination, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's education background, work history, and present age. *Wren*, 925 F.2d at 126.

7

## V. Discussion

### A. Objective Medical Evidence

The objective medical evidence shows that James has lupus or SLE, Sjogren's syndrome, arthritis, depression, and anxiety.

The medical records show that James was diagnosed with pleurisy in 2000. (Tr. 170). There are several records showing normal test results. Physical and medical exams by Dr. Rogers dated April 15, 2005, show normal results, with main complaints of white-out and sleepiness. (Tr. 172–73). James' blood tests on April 15, 2005, and April 7, 2006, show an abnormal white count (Tr. 178, 186), but later tests on July 18, 2006, show normal results, with Dr. Parke noting James was "much improved!" (Tr. 195). Further, James underwent an echocardiogram with Dr. Peabody on April 22, 2005, which yielded normal results. (Tr. 182). James had a CT scan on March 29, 2006, which was also normal. (Tr. 190).

While some records show normal test results, there are multiple instances where results came back abnormal or doctors were unable to diagnose James. Test results from April 2006 show a finding of Sjogren's and SLE. (Tr. 187–88, 199). Dr. Parke, a Rheumatologist, examined James on April 7, 2006, and determined she had rheumatoid arthritis, SLE, sarcoidosis or Sjogren's syndrome. (Tr. 205). He placed James on medication to initially resolve her symptoms and then control them as needed. (Tr. 205). When Dr. Parke saw James in June of 2006, he noted her SLE had improved but was not resolved. (Tr. 211). James saw Dr. Gaffney, a sleep specialist, on July 31, 2006, but he was unable to diagnose the underlying cause of James' fatigue. (Tr. 183). Dr. Parke saw James again on December 10, 2007, when he provided medication for SLE; her

symptoms seemed to have worsened and included swelling in the feet and pain in the hands, elbows, feet, and chest. (Tr. 207). Dr. Mangapuram examined James on May 6, 2008, and his evaluation was completely normal; however, he recommended a follow-up with rheumatology because of her complaints of generalized joint pain, muscle spasms, fatigue, and lupus flare ups. (Tr. 226–27). On July 22, 2008, Dr. Parke saw James again and recommended a sleep evaluation because he could not determine if her fatigue was caused by SLE. (Tr. 240). On September 15, 2008, Dr. Wright reviewed James' RFC and found that James' only medically determinable impairment was lupus. (Tr. 247).

There is conflicting evidence in the record as to the degree and severity of James' impairments. The ALJ wholly failed to mention James' diagnosis of SLE, which is a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.02, and merely gave "a bare and summary conclusion that [the claimant] does not meet the criteria of any listing." *Dowles v. Barnhart*, 258 F. Supp. 2d 478. 486 (W.D. La. 2003). While some of the objective medical evidence could be said to support the conclusion that James did not meet any listing, other objective medical evidence could be said to support a contrary conclusion. The ALJ did not discuss any of the objective medical evidence in connection with *any* listing, much less the listing most applicable, Listing 14.02. As such, the objective medical evidence factor cannot be said to support the ALJ's decision.

**B. Diagnosis and Expert Opinion**

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, the opinion, diagnosis, and medical evidence of the treating physician,

9

especially when the consultation has been over a considerable amount of time, should be accorded considerable weight. *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusional and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with...other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The opinion of a medical specialist is generally accorded more weight than opinions of non-specialists. *Id.* "'[T]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez*, 64 F.3d at 176 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176.

The Social Security Regulations provide a framework for the consideration of medical opinions. Under 20 C.F.R. §§ 404.1527(d)(2)–(6), 416.927(d)(2)–(6), consideration of a physician's opinion must be based on:

(1) the physician's length of treatment of the claimant,
(2) the physician's frequency of examination,
(3) the nature and extent of the treatment relationship,
(4) the support of the physician's opinion afforded by the medical evidence of record,
(5) the consistency of the opinion with the record as a whole, and
(6) the specialization of the treating physician.

*Newton*, 209 F.3d at 456. While opinions of treating physicians need not be accorded controlling weight on the issue of disability, in most cases such opinions must at least be given considerable deference. *Id.* Again, the Social Security Regulations provide guidance on this point. Social Security Ruling 96-2p provides:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling (SSR) 96-2p, 61 Fed. Reg. 34490 (July 2, 1996). With regard to the weight to be given "Residual Functional Capacity Assessments and Medical Source Statements," the Rule provides that "adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527…providing appropriate explanations for accepting or rejecting such opinions." *Id.*

The Fifth Circuit adheres to the view that before a medical opinion of a treating physician can be rejected, the ALJ must consider and weight the six factors set forth in 20 C.F.R. 404.1527(d). *Newton*, 209 F.2d at 456. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Id.* at 455; *see also Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so."). However, perfection in administrative proceedings is not required. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

11

Here there are eight medical opinions in the record. Dr. John Rogers treated James from December 29, 2003, to April 5, 2006, and referred her to Dr. Brenda Peabody for an echocardiogram on April 22, 2005, and to Dr. Kevin Gaffney, a sleep specialist, on July 31, 2006. Dr. Donna Zhang referred James to Dr. Frank Parke, a rheumatologist, on March 23, 2006. Dr. Parke treated James from April 7, 2006, to July 22, 2008. Dr. Balakrishna Mangapuram examined James on May 6, 2008. On June 5, 2008, Dr. Roberta Herman completed a Physical Residual Functional Capacity Assessment based on her review of James' medical records,[4] which Dr. James Wright affirmed on September 15, 2008.

The ALJ addressed the records of most of these doctors in his opinion, but he was selective in doing so. While he noted medical tests that came back normal, the ALJ failed to account for discrepancies in the reports. The ALJ noted Dr. Herman found that James could perform light work and that Dr. Wright agreed with this finding. (Tr. 21). The ALJ also noted the results of Dr. Mangapuram's exam, finding that James was able to walk without assistance, carry objects less than five pounds, and had good grip and ability to reach. (Tr. 21). Here, however, he ignored Dr. Magnapuram's prognosis of "poor" and recommendation of a follow-up with rheumatology. (Tr. 227). The ALJ also addressed the observations of Dr. Parke,[5] noting that there were times when her blood tests came back slightly abnormal but overall James' lupus was improving. (Tr. 21).

---

[4] The RFC found that James' alleged limitations were not fully supported and found her able to stand or sit for 6 hours in a normal eight-hour workday, she could frequently lift 10 pounds, she had no visual or manipulative limitations, and only a few environmental limitations. (Tr. 228–35).

[5] The ALJ's opinion refers to Doctor Parke Frank (Tr. 21); however, the records clearly show the doctor's name is Frank Parke. (Tr. 206).

12

However, the ALJ failed to note that Dr. Parke's most recent examinations of James were poor, noting a worsening of her symptoms and an inability to diagnose her fatigue. (Tr. 207, 240). Finally, the ALJ addressed Dr. Gaffney's observations as a sleep specialist, noting that James was a person with normal capabilities who is overly sleepy, but there is little clue as to the cause. (Tr. 21).

The ALJ failed to consider all the evidence in the record. While the evidence the ALJ included in his opinion supports his findings, the substantial evidence of the whole record does not. An ALJ may not "pick and choose only the evidence that supports his position," he must consider all of the evidence. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (internal quotation marks and citation omitted). The diagnosis and expert opinion facts do not support the ALJ's decision.

## C. Subjective Evidence of Pain

The next factor to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render her disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423 (2009). The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment, which could reasonably be expected to cause pain. Statements made by the individual or her physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. § 423 (2009). "Pain constitutes a disabling condition under the SSA only when it is 'constant,

unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618–19 (citing *Darrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment, which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

Here the ALJ examined both James' oral and written testimony. James testified that dry mouth and dry eyes accompanied with chest pains led to her diagnosis of SLE and Sjogren's syndrome. (Tr. 30). She explained that the symptoms that led her to quit her job included exhaustion, blisters and sores on her hands and feet, and joint pain. (Tr. 30–31). In her Daily Activity Questionnaire, James further explained that chest pain and the feeling of being weighed down with five-ton weights kept her from doing her normal daily activities. (Tr. 136).

The ALJ rejected this testimony as not entirely credible. Specifically, the ALJ noted that James' pain and alleged limitations were "not wholly consistent with the degree of manipulative limitation alleged." (Tr. 20). The ALJ recognized James' limitations before noting that she was still able to vacuum, do laundry, cook, and go to church and the grocery store. (Tr. 21). The ALJ also noted the inconsistency between James' claim of hand pain, which makes it difficult to hold a pen, and her neat and legible handwriting. (Tr. 21). However, the ALJ failed to account for the activities James used to participate in but no longer does, such as singing in the church choir, attending 5K walks, and hosting dinner parties at her home. (Tr. 131, 134, 136). In

addition, the ALJ failed to clarify that James does chores such as vacuuming and laundry once a month at most and is unable to fold the laundry when she is done. (Tr. 138–39). This further inconsistency does not provide substantial evidence to support the ALJ's findings.

### D. Education, Work History, and Age

The final element to be weighed is the claimant's educational background, work history, and present age. A claimant will be determined to be under disability only if the claimant's physical or mental impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The record shows that James was forty-four at the time of her hearing before the ALJ and had a college degree from Sam Houston. (Tr. 27). The ALJ questioned Ms. Cullenberg, a vocational expert ("VE"), at the hearing about James' ability to engage in gainful work activities. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughn v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments that the ALJ has recognized to be supported by the whole record. Beyond the hypothetical

question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling*, 36 F.3d at 436.

The ALJ questioned the VE briefly, asking if someone "who could stand or walk about two hours in an eight hour day with normal breaks, or sit for six, lifting or carrying about 10 pounds occasionally, no dangerous machinery or hazards" could perform the job as an accountant. The VE responded affirmatively. James' attorney was then allowed to examine the VE. He asked the VE if someone who had to lay down for four hours a day would be able to perform the job of accountant, and the VE said no. James' attorney also asked if someone who had trouble staying on task would be able to perform the work, and the VE said no.

The ALJ posed only one hypothetical question to the VE, and it did not encompass all the impairments that the ALJ recognized. The ALJ's question made no mention of the pain caused by James' lupus nor how it affected her ability to concentrate and focused only on the symptom of fatigue. Further, the ALJ did not explain how he determined James would be able to stand for two hours out of an eight-hour work day. The ALJ's examination of the VE was woefully lacking when compared with the evidence in the record, and therefore the VE's testimony is not developed enough to support the ALJ's findings.

## V. Conclusion

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner did not properly follow the guidelines propounded by the Social

Security Administration and applicable case law at step three and step four and that further development of the record is necessary. Based on these infirmities in the ALJ's opinion, substantial evidence does not support the ALJ's decision. The Court therefore ORDERS that the Plaintiff's Motion for Summary Judgment (Document No. 8) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 9) is DENIED, and the matter is REMANDED to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

Signed at Houston, Texas, this 27th day of July, 2010.

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE